FILED
U.S. DISTRICT COURT
SAVANNAH DIV.
2016 MAY -3 AM 9: 36

CLERK
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

UNITED STATES OF AMERICA )
)
v. ) CASE NO. CR415-144
)
DARIUS ANDRE HOLMES, )
)
    Defendant. )
)

## O R D E R

Before the Court is Defendant's Renewed Motion for Judgment of Acquittal and/or Motion for New Trial. (Doc. 92.) For the following reasons, Defendant's motion is **DENIED**.

### BACKGROUND

Defendant was charged with one count of possession of a firearm by a convicted felon and two counts of heroin distribution. (Doc. 50.) Trial in Defendant's case began on March 7, 2016 and ended on March 8, 2016. (Doc. 83; Doc. 87.) The Government presented a number of witnesses at trial: two agents from the Chatham Savannah Counter Narcotics Team ("CNT"), a forensic chemist for the Georgia Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), an agent with the ATF, a confidential informant ("CI") for the CNT, and an investigator with the sheriff's office. In addition to the witnesses, the Government introduced at trial phone recordings, videotaped

evidence, the heroin Defendant sold, and the firearms for which he traded. Defendant declined to testify.

The Government's witnesses testified that on August 18, 2015, Defendant sold the CI heroin in exchange for $1,500.[1] Also on August 18, 2015, Defendant engaged in a second transaction wherein he traded heroin for three firearms. Defendant was unaware that the trade was a "reverse-firearms" transaction set up by local law enforcement. The CI facilitated the transaction, during which Defendant met with a CNT agent to trade the heroin for firearms. The transaction went as planned and Defendant was apprehended at its conclusion. During the transaction the CI offered to purchase magazines for Defendant. This second transaction was recorded on video. Testimony was also elicited that the weapons had travelled in interstate commerce and that the substance Defendant distributed had tested positive for heroin.

There were some inconsistencies in the trial testimony. As to the first transaction, the heroin was alternatively described as "light brown" and "dark brown". Furthermore, an agent's report—which was not entered into evidence—indicated that the

---

[1] Some of this money was recovered after a search of Defendant's home.

$1,500 used to purchase the heroin contained a different number of bills than the agent testified to at trial.[2]

As to the second transaction, the video evidence from the drugs-for-guns transaction showed two rocks of heroin. However, when the heroin was presented in court it was in the form of a powdery substance. There were also discrepancies in the weights of the heroin as measured at the time of seizure and then at the ATF lab. Specifically, the video evidence establishes that the heroin was in the form of two rocks weighing a total 7.4 grams. However, at trial the heroin was "mostly powdery" and weighed 6.58 grams.

At trial, the Government elicited testimony that heroin tends to break down when handled and that the weight discrepancies were caused when testing consumed some of the heroin. Moreover, the Government argued that different descriptions of the heroin's color was caused by differences in perception and noted that the agent may have merely been mistaken as to the number of bills used in the first transaction. At trial, Defendant moved for a judgement of acquittal based on a purported lack of evidence. Defendant also requested that the Court instruct the jury on the entrapment defense based on the CI offering to purchase gun magazines for

---

[2] The $1,500 was broken down into several smaller bills for purposes of the heroin transaction.

3

Defendant. The Court denied Defendant's motion and request. Ultimately, the jury convicted Defendant on all three counts.

Following trial, Defendant renewed his motion for acquittal and requested, in the alternative, a new trial. (Doc. 92.) In the motion, Defendant argues that there was insufficient evidence at trial to convict Defendant on all counts. (Id. at 3.) Defendant also argues that the Court erred when it determined that Defendant was not entitled to an instruction on the entrapment defense. (Id. at 7.)

**ANALYSIS**

I. COUNTS I AND II

In considering a motion for acquittal under Federal Rule of Criminal Procedure 29, the Court views the evidence in the light most favorable to the verdict. United States v. Sellers, 871 F.2d 1019, 1021 (11th Cir. 1989). The issue before the Court is "whether a reasonable jury could have found the defendant guilty beyond a reasonable doubt." Id. (citing United States v. O'Keefe, 825 F.2d 314, 319 (11th Cir. 1987)). Essentially, the goal is preventing verdicts based wholly upon "speculation and conjecture." United States v. Kelly, 888 F.2d 732, 741 (11th Cir. 1989).

The Court may grant a defendant's motion for a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). Where a defendant moves for a new trial based on

improperly admitted evidence, the defendant must show that an objection was properly preserved, the court abused its discretion in admitting or rejecting the evidence, and the error was prejudicial to the defendant. United States v. Stephens, 365 F.3d 967, 974 (11th Cir. 2004). Motions for new trials based on other trial errors must demonstrate that the error created circumstances that rendered the trial prejudicially unfair. See United States v. Prunick, 273 F. App'x 807, 808 (11th Cir. 2008) (affirming decision to grant new trial where joinder of pornography counts with other charges resulted in prejudicially unfair trial); United States v. Martinez, 763 F.2d 1297, 1315 (11th Cir. 1985) (rejecting defendant's motion for new trial based on discovery violation because violation did not render trial "fundamentally unfair").

In his motion, Defendant argues that the evidence presented as to Counts I and II, was insufficient to sustain a finding of guilt beyond a reasonable doubt. (Doc. 92 at 3.) In regards to Count I, Defendant takes issue with the description of the heroin that CNT recovered. (Id.) Defendant also claims that the Government did not provide sufficient evidence regarding the heroin's chain of custody. (Id.) Finally, Defendant argues that the discrepancy in testimony regarding the number of bills that were used to purchase the heroin in Count I indicated that the CNT agent's testimony was unreliable. (Id.) In regards to Count

II, (Id.) Defendant again reiterates his concerns with the appearance and weight of the heroin as well as the Government's chain of custody.[3] (Id.)

In this case, the jury was able to consider the discrepancies between the described color of the heroin, the weight of the heroin, and the money used to purchase the heroin. Defendant's counsel went into great detail during closing arguments to draw out these issues and to suggest that the witnesses the Government proffered were unreliable. The Government responded arguing that the difference in color may have been based upon varying perceptions, that the difference in weight was marginal and largely caused by the consumption of the heroin in lab tests, and that the heroin broke down as a result of handling. The Government also argued that it was possible that an agent made a mistake when counting the bills.

---

[3] As an initial matter, Defendant's argument regarding the chain of custody "goes to the weight rather than the admissibility of the evidence." United States v. Lopez, 758 F.2d 1517, 1521 (11th Cir. 1985) (citing United States v. Henderson, 588 F.2d 157, 160 (5th Cir. 1979); United States v. Clark, 664 F.2d 1174, 1176 (11th Cir. 1981)). Defendant's speculative argument that there was a break in the chain of custody does not indicate prejudice in this case. Agents at CNT and the lab where the heroin was tested detailed their storage and transfer methods for drugs. For example, the forensic chemist who tested the drugs recovered from Defendant went into detail about the "lock box" method for agencies to deposit possible drugs for testing. She identified the heroin that she tested by noting her signature on the plastic bag. There was no testimony elicited that the heroin recovered from Defendant was not treated in accordance with these policies and Defendant did not object to the admission of the heroin at trial.

6

Furthermore, the evidence at trial consisting of phone recordings detailing Defendant's heroin deal; personal testimony of the CI, state agents, and lab technician; and video evidence of the reverse firearms transaction provided significant evidence that Defendant committed the crimes for which he was charged. Specifically, the CI noted that he had purchased heroin from Defendant on August 5, 2015 in addition to the transactions on August 18, 2015, and corroborated this evidence with phone recordings. Moreover, the CI testified that Defendant had expressed interest in obtaining firearms and that the CI worked with CNT to arrange the reverse firearms deal. The undercover agent with CNT who facilitated the transaction with Defendant testified that Defendant brought the heroin to trade for the firearms in full knowledge of Defendant's status as a felon. Video of the entire transaction corroborated the agent's testimony and showed Defendant's participation. Field tests of the substance recovered on August 18 tested positive for heroin, and laboratory tests corroborated these initial field tests. Moreover, several witnesses at trial positively identified the heroin recovered from each of the August 18 transactions. Finally, an ATF agent testified that all three firearms used in the second transaction on August 18 had traveled in interstate commerce.

Viewing this evidence in the light most favorable to the verdict, it is clear that the judgment the jury rendered was not based purely on speculation. Kelly, 888 F.2d at 741. Even upon an independent evaluation of the evidence, the Court cannot determine that the evidence presented at trial "preponderate[s] heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." Martinez, 763 F.2d at 1312. Accordingly, Defendant's motion for a judgment of acquittal or a new trial as to Counts I and II is **DENIED**.

II. COUNT III

In regards to Count III, Defendant argues that the Court erred when it declined to allow Defendant to present the entrapment defense. (Doc. 92 at 5.) Specifically, Defendant argues that the CI entrapped him to take possession of three firearms in exchange for heroin. (Id. at 6.) Defendant claims that the CI promised to purchase a magazine for one of the firearms and that Defendant was hesitant to accept the weapons in trade for heroin absent ammunition. (Id.) Defendant argues that the evidence presented at trial warranted the instruction and that the Court's refusal to instruct the jury on entrapment was in error. (Id. at 7.)

A trial court's refusal to give a jury instruction is only reversible error if "(1) the requested instruction was a correct statement of the law, (2) its subject matter was not

8

substantially covered by other instructions, and (3) its subject matter dealt with an issue in the trial court that was so important that failure to give it seriously impaired the defendant's ability to defend himself." United States v. Paradies, 98 F.3d 1266, 1286 (11th Cir. 1996) (citing United States v. Sirang, 70 F.3d 588, 593 (11th Cir. 1995)). An affirmative defense of entrapment "requires two elements: (1) government inducement of the crime; and (2) lack of predisposition on the part of the defendant." United States v. Brown, 43 F.3d 618, 623 (11th Cir. 1995) (citations omitted). However "[t]he defendant's right to present the entrapment 'defense is conditional, since before an entrapment defense may be presented to the jury, an evidentiary foundation for a valid entrapment defense must be present.' " United States v. Sistrunk, 622 F.3d 1328, 1333 (11th Cir. 2010) (quoting United States v. Ryan, 289 F.3d 1339, 1343 (11th Cir. 2002)).

The defendant bears the burden for the initial production as to government inducement. Sistrunk, 662 F.3d at 1333. To meet this burden, a defendant may produce

> [a]ny evidence sufficient to raise a jury issue "that the government's conduct created a substantial risk that the offense would be committed by a person other than one ready to commit it." The burden is light because a defendant is generally entitled to put a recognized defense to the jury where sufficient evidence exists for a reasonable jury to find in [his] favor. Nevertheless, evidence of the government's mere suggestion of a crime or initiation of contact is not

9

> enough. Instead, government inducement requires an element of persuasion or mild coercion. As the First Circuit has recently observed, inducement consists of opportunity plus something like excessive pressure or manipulation of a non-criminal motive.

Brown, 43 F.3d at 623 (citations omitted). Examples of the type of evidence necessary to show persuasion include that the defendant "had not favorably received the government plan, and the government had to 'push it' on him, or that several attempts at setting up an illicit deal had failed and on at least one occasion he had directly refused to participate." Ryan, 289 F.3d at 1344 (quoting United States v. Alston, 895 F.2d 1362, 1368 (11th Cir. 1990)).

Defendant's showing on entrapment was insufficient to justify giving a jury instruction. Defendant argues that the CI's offer to provide magazines to Defendant constituted entrapment. However, Defendant already had possession of, or had indicated the intent to take possession of, the firearms when the CI made the offer to purchase the magazines. See United States v. Williams, 571 F. App'x 887, 889 (11th Cir. 2014) (no jury instruction on entrapment when defendant failed "to present evidence that the government induced him, through persuasion or coercion, to commit the offenses"); United States v. Parr, 716 F.2d 796, 803 (11th Cir. 1983) (no entitlement to the instruction even where defendant was approached by government agent and indicated "doubts, disinterest and reluctance to

engage in the operation"). Moreover, the evidence indicated that Defendant was a "willing buyer" and that the "government simply provided an opportunity" for Defendant to "exercise his preexisting interest" in a drugs-for-guns transaction. Parr, 716 F.2d at 803. As a result, the CI's offer could not have affected Defendant's decision to make the drugs-for-guns trade because the offer was made only after the transaction had taken place.

Finally, even if the instruction was warranted, there was no prejudice. Defendant's counsel was able to argue the defense in closing arguments when she stated that Defendant did not have any inclination to purchase weapons and that there was no evidence he had purchased weapons in the past. Accordingly, Defendant was not prejudiced by the Court's determination that the entrapment instruction was unwarranted. See United States v. Toussaint, 627 F. App'x 810, 815 (11th Cir. 2015) (no prejudice when "counsel argued the entrapment issue . . . and the jury was able to consider the defense"). As a result, the Court did not err in refusing to instruct the jury on entrapment. The Court also declines to order a new trial or grant an acquittal for the same reasons. Accordingly, Defendant's motion as to Count III is **DENIED**.

## CONCLUSION

Before the Court is Defendant's Renewed Motion for Judgment of Acquittal and/or Motion for New Trial. (Doc. 92.) For the foregoing reasons, Defendant's motion is **DENIED**.

SO ORDERED this 2ND day of May 2016.

_____
WILLIAM T. MOORE, JR
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA